The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Our first case today is 20-2321 Hyatt v. Hirshfeld. Ms. Silfen, please proceed. Thank you, Your Honor, and may it please the Court. In this case, the USPTO participated in four week-long trials, participated in discovery, and spent over half a million dollars out of the public's pocket on expert witness fees. That was all for Mr. Hyatt to be able to put on evidence that he could have and chose not to present to the agency for free. This Court has addressed en banc the possibility of applicants sandbagging the agency in Section 145 actions. It says that the tradeoff for being able to present new evidence is that the applicant has to bear the heavy economic burden of all the expenses of the proceedings. Yes, but counsel, that case with which I have a modest amount of familiarity, unfortunately for you preceded NanQuest by Supreme Court. So rather than focusing on sort of the policy or sort of sympathetic reasons for why we ought to find for you, I'd ask you to focus your argument on NanQuest and how expert fees differ from attorney's fees as articulated in the NanQuest Supreme Court decision. Yes, and I'm happy to. So in NanQuest, the Supreme Court was addressing whether the term expenses includes attorney fees, and the Court was focused particularly on the background principle that attorney fees are special, a principle that goes back to really the founding where courts and dictionary definitions and lots of things defined the American rule as based on the availability of attorney fees. So the American rule... Ms. Silfen, sorry, Ms. Silfen, this is Judge Hughes. Let me interrupt you. I'm not sure that you have the American rule quite right. Isn't the American rule a broader rule that parties bear all of their own expenses unless otherwise stated by Congress? The American rule doesn't just speak to attorney fees, does it? I think it is focused on attorney fees, and the question... So let's just assume I disagree with you about that, because I really don't think you have that right, and I don't think the Supreme Court's ever said that the American rule only applies to attorney fees. But it may be that it's the main focus in most of these cases because that's where all the dollars are. But why don't you explain why the predecessor to 145, when it was enacted back in the mid-19th century, showed Congress's intent to capture expert witness fees in that provision? Sure, I'm happy to do that. So it's clear that expenses have been brought in costs, and Congress made that clear. It's clear through lots and lots of cases. Can I just interrupt? I'm sorry, I'm not letting you get an answer. But I think it's a little too pat to say that expenses is broader than cost in the context of this specific provision, because didn't the Supreme Court, when it wrote about this provision, reference legal dictionaries from the 1800s that defined this phrase as cost, essentially? So going back to the 1850s, the expenses provision was written in the 1830s, in 1839. Then in 1853, Congress said, okay, there's not a lot of uniformity in what is being shifted here. We're going to define costs, which is what we will, by default, shift. And Congress set out a specific definition for costs, which does not include attorney fees and does not include expert witness fees. And then in 1870, Congress looked at the predecessor to Section 145 again and considered changing the term to the defined term costs, what was then defined term costs, and chose not to. And specifically looked at converting the statute to a cost-shifting statute and kept it as expenses. And I think it's important to note that expenses is broader than cost, because under Mr. Hyatt's definition, it is not. Under Mr. Hyatt's definition, expenses is the same thing as cost. They're just completely coextensive. And it's clear that Congress didn't intend them to be coextensive. And much of the Supreme Court cases, everything except for Nancwest. So why is it clear that Congress didn't intend them to be coextensive if, as Justice Sotomayor wrote, extensiae laetiae means generally allowed costs? So why is it evident from maybe Congress declined to adopt the word costs because it would be redundant of what they already had and it didn't actually amount to a change in the statute? I am not certain I understand, in light of the Nancwest analysis, how you're convincing us that we should reject Justice Sotomayor's assessment of what expenses meant at the time. So there are several things in the Nancwest opinion itself that indicate that expenses was intended to be broader than costs and that the court was addressing only attorney fees. And so I'd point to one thing is the Nancwest opinion's discussion of the Casey case. So there Justice Sotomayor explained that Casey said an explicit reference to negation expenses could shift expert fees in addition to attorney fees, not that the term negation expenses alone shift attorney fees. So that indicates that an explicit reference to litigation expenses can shift expert fees. And that was the way it was addressed in Casey, which had a statement about litigation expenses shifting both expert and attorney fees. Sure, but the problem for you, Ms. Zilsen, is that the phrase here isn't litigation expenses and it's not a modern-day usage. It's an archaic usage that had certain meanings at the time it was enacted. And so even if the phrase litigation expenses might shift expert fees, particularly as in I think it's the ADA case where there was explicit legislative history showing Congress intended that phrase to shift expert fees, we don't have any of that here. There's no legislative history, is there, that shows Congress specifically intended to shift expert witness fees. So even if expenses might be broader than costs, is there still not something out there that might be expenses in addition to costs but not expert fees or attorney fees? Nothing out there that – well, I should say there's a little bit of a dispute on this. Mr. Hyatt is arguing that the USPTO attorney's travel expenses should not count as expenses either. He's not arguing that on appeal, but he stated that in his brief. Sure, but if he's wrong and those are expenses but not the kind of costs that are contemplated by, for instance, 1920, then it does seem that there's some content to expenses beyond costs but not reaching attorney fees and expert witness fees. Isn't that correct? Actually, no, I don't think so. And this case is actually kind of an anomaly, I'd say, in that it has any – Well, why isn't it correct? So a couple things. One is that it's a complicated question that's not on appeal right now whether the PTO attorney's travel fees should count or not. But regardless, typically these 145 cases happen in Virginia and there isn't really any PTO travel to speak of. So this case is an anomaly because the district court judge traveled to Texas and all of the parties traveled to Texas for the case. Counselor, this is Judge Rand. What difference does it make to your argument that the Penn statute deals separately with attorney's fees? So the point there is that in Nanquist, the Supreme Court relied on the fact that there is a reference separately to attorney's fees. So for the statute to sort of cohere and make sense as a whole, attorney's fees would have been also called out in Section 145. And that's not the case for expert witness fees. So there is no other reference to expert witness fees in the Patent Act that would state that Congress should separately call out expert witness fees like it separately called out attorney's fees. Can I just ask one more question, please? I don't know what that really means, though, because if Congress didn't specifically call out expert witness fees, then doesn't that mean under Nanquist's reading of the American rule that it hasn't explicitly decided to ship? Because there's a whole bunch of cases where the Supreme Court has decided that Congress has shifted attorney fees and costs but not expert fees. I'm overstating a whole bunch, but there are at least a couple. And so the failure to specifically call them out, it seems your argument is, well, expenses have to mean something, and we know it's not just costs, and we know it's not attorney fees, so our best guess is that it has to be expert witness fees. But at least under Nanquist's reading of the explicitness requirement in the American rule, how is that kind of rough? Well, this is all we can come up with good enough to shift. Well, so, Your Honor, on the explicit references to expert witness fees, the cases that talk about that are all in the context of a statute that says costs including attorney's fees. And so the court was dealing with a statute that is working with the definition of the word costs, which is defined by a separate statute in sections 1920 and 1821. And so the court was saying that in order to overcome the separate statutory definition of the word costs in the present statute, Congress would have to very specifically say what else is included. Can you cite me one case from the Supreme Court or a regional circuit where the general term expenses has been explicitly intended to include expert witness fees apart from that ADA provision where it uses litigation expenses and specifically says in the reference in the legislative history that it includes experts? Well, certainly, all of the cases up until now, from the 1980s until now, addressing Section 145, the expenses language has interpreted it to include expert witness fees and nobody has disputed that. None of those. I asked for a Supreme Court case or a regional circuit case, not our cases approving the expert witness fees in 145. In any other case, has expenses been interpreted to mean expert witness fees without something more? So the cases I can point to on that are Casey and Nantquest and Arlington Central, which all sort of contain the same proposition, which is a statement that Congress could have used the word expenses to shift expert witness fees. And I'd like to reserve the rest of my time for rebuttal. Ms. Silfen, can you please repeat your response to Judge Hughes' question, which I missed, which is he was asking you for any Supreme Court or regional circuit cases which have interpreted the word expenses to include expert fees. Right, and so I'm happy to answer it again. And the three Supreme Court cases I would point to are Nantquest and Casey and Arlington Central, all of which discuss a statute that either a hypothetical or a real statute that uses the word expenses, and that would be enough to shift expert witness fees. And on top of that, there's the history of all of the cases addressing Section 145 from the 1980s until now, where all of the courts and all of the parties have agreed that the word expenses include expert witness fees. When you say all of the courts have agreed, isn't it true that none of those cases contested it, such that no court was asked to decide that question? It's true that none of the parties contested it as a sort of universally accepted definition. But parties certainly contested lots of things about not wanting to pay the expenses, right? So they routinely contested the amount of expense that was incurred. That's not what I asked. You said every court has held that the word expenses includes expert fees, and I don't believe that's accurate. I don't believe any court has held that. I don't believe any court was ever asked to even analyze that issue, and that's what I want a clear answer to. Did you overstate your case a minute ago, or can you point to me court cases which have actually held that Section 145 includes the award of expert fees? I apologize. I didn't mean to overstate the case. They have implicitly agreed with the parties. You mean no one contested it, so they didn't address it? I wouldn't say they didn't address it. There are definitely cases where the court has explained that it includes expert witness fees, cases like the Taylor case, like the old 1980 Sandvik-Activ-Boleg case where the court has specifically explained that it includes expert witness fees. That is not in the face of any party arguing that it does not include expert witness fees. Counsel, one other question. What Justice Sotomayor focused on in Nanquist was dictionary definitions from the 1800s, which were the relevant time period to assess. The PTO presented us with no such evidence in their brief. Is that correct? The only thing I would point to is the definition actually that the Supreme Court relied on, specifically referring to counsel fees, to attorney fees. I didn't ask you if you could come up with any now. I asked you in your brief, did you point to any dictionary definitions from the relevant time period that you thought supported your argument? I believe we pointed to that one, yes. Okay, and last question is, did you give us any historical evidence at the time of enactment of the statute regarding whether or not experts were ever used in these cases? This statute was enacted in the 1830s, and I will tell you I had a hard time finding any cases in which experts had ever been prevalent or used in patent cases at that time. Are you aware of any cases where experts were in fact used during that time? I am not aware of any cases where a party hired an expert witness during that time. It was really in the 1980s when courts started saying the PTO was at a disadvantage because it was not using expert witnesses, that the PTO began using expert witnesses to rebut the expert witness testimony of an applicant. Yes, but aren't we supposed to be assessing what Congress intended in 1830 that this language would include? Yes, and it's not clear that Congress would have expected expert witnesses to or not to appear. It was only after the statute came into being that there would have been any assessment of whether to include expert witnesses or not. I don't understand that language at all about why the statute had some impact on whether there would be expert witnesses. Are you saying the statute precluded expert witnesses prior to its enactment? I'm just saying there was no statute allowing for this kind of proceeding prior to the enactment of the statute. Okay, so the statute was enacted, and I guess what I'm wondering is I'm trying to assess Congress's meaning in the 1830s for this word or these words in the statute, and I just don't see any historical practice of the utilization of experts in any sort of analogous proceedings. And so I'm just trying to assess, is it really reasonable to believe Congress intended expert witnesses to be recouped if that were not even a practice at the time? I mean, like I said, there was no practice before the statute was enacted, so there really isn't as Congress was enacting it against the backdrop of no expert witnesses being used in this type of case. There just was none of this type of case. And then once the statute was enacted, that's when there's this history of Congress then enacting a statute defining the specific word costs. And one other thing I wanted to mention is in NantQuest the court addressed the idea that the... Sorry, I'm losing my train of thought here. Well, that's okay, I've got one other question for you. So you're focused on this particular proceeding which was adopted in the 1830s, and I guess what I was trying to get you to focus on, unsuccessfully in part maybe because of the way my question was worded, is were you aware of analogous types of cases where experts were routinely utilized? I'm trying to figure out what Congress intended in 1830, and I'm wondering whether on their radar at all, not just for this proceeding, which didn't exist prior to that, but for other types of analogous proceedings, they would have understand expert witnesses would likely be employed. Your Honor, there really is no analogous type of proceeding, and this is actually quite a unique type of proceeding in administrative law broadly because generally the agency's decision-making is reviewed, not de novo. So there really isn't any sort of analogous scheme. Okay, so you're saying there was no analogous cases. I understand that's responsive to my question. Are you aware of any case, any case in 1830 where an expert witness was used? Any? Any case in any field? Yes, there were cases where expert witnesses were used in the 1830s. Often at that time the courts appointed experts. So I'm aware of other cases that involved parties hiring expert witnesses. Most of the time it was the courts hiring the expert witnesses. The Baltimore is a case where I believe there were expert witnesses that were hired by the courts. Okay, so you're aware of cases where the court hired expert witnesses. Did the costs get shifted in those cases? Typically, yes. Yes, that was typically the case. So the cost of the expert that was hired by the court was then borne by one or both of the parties? Typically the losing party. Okay, do you have any case that you can name for me that falls into that situation? The Baltimore is the one that we've cited that I believe falls into that situation. But can I just ask you, isn't that covered by what is now 1920? I seem to recall that there's a provision in 1920 that shifts expert witnesses for court-hired experts to the losing party. Am I missing that? No, I think that's right. I think that the later enactment... Well, that's different. You know, then assuming that that... Because 1920 has a long historical pedigree. Assuming that's the source for it, then that's different when it's court-appointed experts rather than party-hired experts. And it seems to fall... The party-hired experts seem to fall more in line with the historical American rule that parties bear the extraordinary cost of their own attorneys and other things that they hire rather than a court-appointed expert, which is covered by 1920 and, you know, potentially its predecessors. So there are examples. They are not cited in our briefs, but I'm happy to cite them to the court, of expert witnesses being hired by parties in that time frame. And I believe... It's not very helpful at this late stage when we, you know... I mean, it's hard to do this historical research back to the mid-1900s, and you should have cited them in the first place. Okay. Well, I'm also happy to not cite them. I just wanted to offer. Well, you must be happy to not cite them because you didn't do it. So, okay, let's move on and hear from opposing counsel, Mr. Grossman. Good morning, and may it please the court. Section 145 does not authorize the PTO to recover its expert witness fees. Two principles of governing law compel that conclusion. The first is that no statute will be construed as authorizing the taxation of witness fees unless the statute refers explicitly to witness fees. The Supreme Court has held that on four separate occasions, beginning with Crawford Fitting, and, indeed, that is the precise language that was used in Arlington Central and, again, just two years ago in Rimini Street. Counsel, this is Judge Hughes. Can I just interrupt you? You say that it has to explicitly refer to expert witness fees, but do you mean it actually has to use the word expert witness fees or that it just has to explicitly show Congress' intent to shift those fees? I think it has to show Congress' intent beyond any serious doubt to the point that it is apparent that Congress is overcoming the presumption, the long historical rooted presumption, that parties will bear their own expenses. Right. So what do we do with... The phone lag means we talk over each other. I apologize. But what do we do with all these cases? And there's not a ton of them, but there's at least several where the Supreme Court has acknowledged that the phrase litigation expenses or something either is insufficient to shift these. Well, I think this court is in a very fortunate place in terms of interpreting this particular statutory language expenses of the proceeding because the Supreme Court has already done that. Can you answer my question? I'm sorry to interrupt, but somebody is breathing heavily in the phone. Could everybody try to take a little step back because I'm having trouble hearing the questions and answers. So I'm sorry to disrupt you, Judge Hughes. Please continue. No, I'm hearing it too. So perhaps if you're not talking, you could mute yourself as well. I'm not saying you to do that, Chief, but it's sometimes helpful. So can I just re-ask my question, which is not talking about this case and not talking about Mancos, particularly it is the Supreme Court has used the phrase litigation expenses or something like that and suggested either in dicta or at least in the ADA case it was held that it did include expert witness fees. So why shouldn't we use that same kind of reasoning to show that litigation expenses or something of the like is enough to indicate Congress's intent? Well, so I can answer your question in a general sense, which is the explicit reference rule is what the Supreme Court has said specifically is the rule that governs in this area. And so if you had a phrase like litigation expenses, it might be apparent from the statutory context that that would be sufficient to shift witness fees. But here you have expenses of proceeding and the Supreme Court has stated that that refers to the class of expenses traditionally recovered in litigation. And so we know that that is a different phrase that certainly could not reach something like expert witness fees for the same reason that it can't reach attorney's fees. That's what I mean when I say the court is fortunate that it has the benefit of the Supreme Court's interpretation of this precise language here. And I would note, as to the governing rule, it is, as Judge Hughes suggested, the American rule. The Supreme Court made clear, as stated expressly in Kansas v. Colorado, that it's the same American rule that applies to attorney's fees and to expert witness fees. The second principle that I wanted to mention is simply that Section 145 does not expressly authorize courts to shift expert witness fees. And again, it's the same standard that applies to attorney's fees. And in ManQuest, the Supreme Court held that expenses of proceeding was not an explicit authorization to shift attorney's fees. Since the language says nothing more about expert witness fees than it does about attorney's fees, the result has to be the same here. Those two principles dispose of the PTO's claim that Section 145 authorizes shifting expert witness fees to applicants. And the court need go no further than that. Counselor, this is Doug Dorena. Is it your position that Justice Sotomayor's opinion in ManQuest is dispositive here in this case? Yes, Your Honor. It's the same American rule that applies to both categories. And so for that reason, the court's analysis, particularly in Section 3A, it's textual analysis, is governing on this court and in this case. Okay. The only other point I would raise is my friend mentioned attorney travel expenses. We paid those just due to the circumstances of the case. So that's not something that is at issue on appeal in this case. I understand you paid them. Can I just ask a logistical question? Judge Lamberth is in DDC. Why were you all in Texas? I'm just confused. Oh, so what happened was during the second merits trial, Judge Lamberth fell ill and had to postpone the trial midway through and also postpone the third trial. And he was already scheduled to sit that summer in San Antonio. Mr. Hyatt wanted to conclude the trials as expeditiously as possible. And so we requested jointly, I believe, with the PTO, that if it were possible, that Judge Lamberth conduct the trials in San Antonio so that they could be concluded more quickly rather than having to wait for him to return to the District of Columbia in the fall. Okay, thank you. If there's nothing further, we'll turn back to Ms. Silfen for her rebuttal. Thank you, Your Honor. Apologies, Your Honor, but Ms. Silfen exceeded her rebuttal time. How much time should I allot for her? You have two minutes, please. Thank you. Thank you, Your Honors. Just a couple things on rebuttal. One is that Mr. Grissom was talking about the apparent from the statutory context. Here, the context includes the entire phrase, all the expenses of the proceedings shall be paid by the applicant. And in Nanquist, the Supreme Court focused also on the words of the proceedings and explained that attorney time is an expense that would be incurred regardless of whether there's a 145 action happening. The attorneys are hired by the agency and will continue to work and be paid. And just focused on that as part of the statutory interpretation here. And here, the proceedings, the expert witnesses would not be incurred but for these proceedings. So the statutory context requires all of that, all of the expenses of the proceedings. And then in terms of expenses having a broader scope than costs, I just wanted to mention that there are several statutes that include both expenses and costs and that would clearly be surplusage if expenses meant the same thing as costs. Okay. The court has no other questions. Okay, thank you, Ms. Silfen. I think both counsel and Ms. Case have taken under submission.